# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA HONE<br><br>              Plaintiff,<br><br>   v.<br><br>WAL-MART, INC..<br><br>              Defendant. | Civil No. 14-cv-1006 (FLW) (DEA)<br><br>**MEMORANDUM OPINON**<br>**& ORDER** |

ARPERT, Magistrate Judge.

    This matter comes before the Court on the following motions: (1) a motion by Plaintiff to disqualify counsel for Defendant; and (2) a motion by Defendant to compel the production of documents and for sanctions. Also before the Court are the following informal letter applications: (1) an application by Plaintiff to bar two supplemental defense expert reports; and (2) an application by Plaintiff seeking to quash Defendant's subpoena to a former employer of Plaintiff.

I. Motion to Disqualify

    This is a personal injury action. In 1998, Plaintiff underwent a total mastectomy followed by bilateral breast reconstruction with implants. Plaintiff alleges that in 2012, an incident at a Walmart store caused one of the implants to migrate, resulting in an asymmetry with the other breast. As a result of her alleged injuries, Plaintiff underwent two surgical procedures in 2013 that were performed by Dr. Matthew Kaufman.

    In late 2016, after fact discovery in this case had closed, Plaintiff underwent additional breast surgeries by a different physician, Dr. Steven Copit. In light of these additional

procedures, on January 27, 2017, the Court entered a Scheduling Order providing for the production of supplemental medical records, expert reports, and expert depositions.

On March 9, 2017, Defendant served a subpoena for the deposition of Dr. Matthew Kauffman, who performed Plaintiff's 2013 surgeries, as well as for the production of documents from Dr. Kauffman. The subpoena was returnable March 28, 2017. Plaintiff objected to the subpoena, arguing it was outside the scope of the supplemental discovery contemplated by the Scheduling Order, which Plaintiff argues was limited to issues related to her 2016 surgeries. In a letter dated March 21, 2017, Plaintiff requested that the Court quash the subpoena. ECF No. 31-8. Defendant opposed this request by letter dated March 22, 2017. ECF No. 31-9.

On the return date of the subpoena (March 28th), the Court had not yet decided Plaintiff's application to quash. Nevertheless, at 4:08 p.m. on March 28, 2017, Plaintiff's counsel received an email from Defendant's counsel stating "I am at Dr. Kauffman's office and called your office. Are you coming?" ECF No. 31-10; *see also* ECF No. 33 (Attorney Certification) at ¶ 10 ("When it became apparent Plaintiff's counsel chose not to appear, defense counsel called and emailed him inquiring as to when and if he would appear.") When reached by telephone a few minutes later, defense counsel advised Plaintiff's counsel that he intended to proceed with the deposition and document examination in Plaintiff's counsel's absence. ECF No. 31-2 at ¶ 16. Defense counsel indicated he would proceed because no Order had been entered staying or quashing the deposition. ECF No. 33 (Attorney Certification) at ¶ 11. Despite Plaintiff's counsel's "vociferous objections," defense counsel went ahead with the deposition and the review of Dr. Kaufman's file. ECF No. 31-2 at ¶ 16.

Plaintiff now moves to disqualify Defendant's counsel and asks the Court to strike the deposition transcript and "any other fruits of the improper questioning." ECF No. 31-1 at 16.

2

Plaintiff contends that it was improper for defense counsel to proceed with the deposition while an unresolved objection was pending.  Plaintiff further argues that defense counsel's *ex parte* questioning of her physician violated both New Jersey state law as well as the federal Health Insurance Portability and Accountability Act ("HIPAA").  Last, Plaintiff argues that the deposition should not have proceeded because the subpoena was invalid.

In response, Defendant argues that the operative Scheduling Order permitted Defendant to take the discovery, that Defendant did not require leave of Court to depose Dr. Kaufman, that Plaintiff waived any privilege objection to the subpoena, and that the deposition resulted in no prejudice to Plaintiff because no privileged information was disclosed.

Although much of Defendant's brief is directed to the propriety and validity of the subpoena and the relevance of the discovery sought, those issues were raised prior to the deposition by way of the Plaintiff's application to quash the subpoena, and those issues, quite frankly, have been rendered moot because Dr. Kaufman has now been deposed.  Regardless of whether the subpoena was valid or the discovery was appropriate, the threshold issue raised by the present motion is whether defense counsel should have proceeded with the deposition in the absence Plaintiff's counsel.  The answer to that question is no.

Once defense counsel learned that that Plaintiff's counsel would not be participating, Dr. Kaufman's "deposition" effectively became an *ex parte* interview.  However, this was not an interview of an ordinary fact witness; Dr. Kaufman was one of Plaintiff's treating physicians.  Nationwide, courts are split on whether *ex parte* questioning of a treating physician by an adverse party is permitted and, if permitted, how such interviews are to be conducted.  *See generally* Joseph Regalia, V. Andrew Cass, *Navigating the Law of Defense Counsel Ex Parte Interviews of Treating Physicians*, 31 J. Contemp. Health L. & Pol'y 35, 39 (2015).  Under New

Jersey law, *ex parte* interviews of treating physicians are generally allowed, but because this *ex parte* contact implicates issues of privilege, confidentiality, and the "physician's loyalty" to his patient, certain conditions must be met:

> Since it is unrealistic to anticipate that physicians will participate in such interviews without plaintiff's consent, plaintiff's counsel should provide written authorization to facilitate the conduct of interviews. If such authorizations are withheld unreasonably, their production can be compelled … by motion. However, conditions should be imposed in the authorizations, or in orders compelling their issuance, that require defendant's counsel to provide plaintiff's counsel with reasonable notice of the time and place of the proposed interviews. Additionally, the authorizations or orders should require that defendant's counsel provide the physician with a description of the anticipated scope of the interview, and communicate with unmistakable clarity the fact that the physician's participation in an *ex parte* interview is voluntary.

*Stempler v. Speidell*, 100 N.J. 368, 382, 495 A.2d 857, 864 (1985). The purpose of this procedure is to "afford plaintiff's counsel the opportunity to communicate with the physician, if necessary, in order to express any appropriate concerns as to the proper scope of the interview, and the extent to which plaintiff continues to assert the patient-physician privilege with respect to that physician." *Id.*

In the present case, all of the conditions necessary for defense counsel to proceed with *ex parte* questioning of a treating physician were not present. At the threshold, Dr. Kaufman's appearance was not voluntary; it was compelled by subpoena. Once it was apparent that Plaintiff's counsel would not be present, there is no indication that Dr. Kaufman was told, "with unmistakable clarity", that his participation in the absence of Plaintiff's counsel was completely voluntary. And even if he had been so advised, because Plaintiff's counsel expected to attend the deposition, Plaintiff's counsel did not have a proper opportunity "to communicate with the physician, if necessary, in order to express any appropriate concerns as to the proper scope of the

interview, and the extent to which plaintiff continues to assert the patient-physician privilege with respect to that physician." *Id.*

Given the interests at stake and the circumstances present, it is troubling that defense counsel chose to proceed in Plaintiff's counsel's absence. Even if Defendant is correct in its assertion that Plaintiff's counsel should have appeared on the date set by the subpoena because there was no Order staying/quashing the subpoena,[1] Defendant's remedy under the circumstances was not to proceed with an *ex parte* deposition of Plaintiff's treating physician. Rather, counsel should have adjourned the deposition to a later date and sought sanctions, including reimbursement of the costs incurred for the canceled deposition. Unfortunately, defense counsel chose to proceed unilaterally.

"When deciding a motion to disqualify counsel, the movant bears the burden of proof that disqualification is appropriate." *Dantinne v. Brown*, 2017 WL 2766167, at *2 (D.N.J. June 23, 2017). "Disqualification is a harsh remedy which must be used sparingly." *Alvarez v. Am. Lafrance, LLC*, 2017 WL 2709562, at *2 (D.N.J. June 23, 2017) (internal quotation marks omitted). Here, the Court finds that Plaintiff has not established that disqualification is appropriate. Indeed, Plaintiff cites no authority that supports disqualification under the present circumstances. Furthermore, Plaintiff's counsel is not completely without fault in this situation. Although it has been the Court's experience (and, in the Court's opinion, a better practice) that counsel in this District wait for a ruling on a pending motion to quash rather than proceeding or forcing a party to make a separate application for a stay, there is no express rule automatically staying a subpoena when a motion to quash is filed. Therefore, when it became apparent to Plaintiff's counsel that defense counsel expected compliance with the subpoena despite the

---

[1] That issue is not before the Court and, therefore, the Court does not decide the question.

5

pending application to quash, Plaintiff's counsel should have immediately contacted the Court and applied for an emergency stay. Surprisingly, neither attorney reached out to the Court for a ruling of any sort.

While a "district court has inherent authority to impose sanctions upon those who would abuse the judicial process," such "inherent powers must be exercised with restraint and discretion." *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73-74 (3d Cir. 1994) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991)). When imposing any sanction, a court must ensure that "the sanction is tailored to the harm identified." *Westinghouse*, 43 F.3d at 74. Disqualification is an extreme sanction and the Court finds such a measure is not necessary to redress the harm here. However, as identified by the *Stempler* Court, there are substantial interests implicated by defense counsel's conduct here and it is necessary for the Court to ensure that those interests are protected. Therefore, the Court finds it appropriate to grant Plaintiff's motion to the extent it seeks to strike and bar Defendant's use of the deposition transcript and documents obtained as a result of the March 28th "deposition" of Dr. Kaufman. Regardless of the importance or relevance of the information Defendant was able to obtain from Dr. Kaufman that day, the search for the truth in the litigation process must be conducted in accordance with governing rules and law. Defense counsel engaged in an *ex parte* interview of a treating physician without ensuring the required conditions were met. Consequently, Defendant may not use as evidence or otherwise the testimony and documents obtained from Dr. Kaufman on March 28, 2017.

II. Motion to Compel and for Sanctions

In the course of discovery, Defendant propounded a number of document request to Plaintiff. Included were the following:

Document Request No. 1 seeking all records for any injury or illness "which allegedly resulted from the underlying incident."

Document Request No. 6 seeking all records for any injury or illness "which occurred prior to the date of the underlying incident."

Document Request No. 8 seeking all records for any injury or illness "which occurred after the date of the underlying incident."

Defendant contends that in light of "recent amendments to discovery", it is "clear" that Plaintiff's responses to these requests have been incomplete. ECF No. 32. For example, Defendant argues that since it has received pre-surgical photographs and consent forms related to Plaintiff' most recent surgeries, both of these things "had to also exist" with respect to her 2013 surgeries but were not produced. Brief, ECF No. 32 at 4. Consequently, Defendant has moved to compel production of Dr. Kaufman's pre-surgical breast photographs and consent forms (Attorney Certification, ECF 32 at ¶15, 21), supplemental billing information related to a recent surgery performed by Dr. Copit (*Id.* at ¶ 22); and supplement records concerning changes in Plaintiff's Social Security disability status (*Id.*). Defendant's motion also refers to records regarding "certain mammograms, prior neck injury treatment notes, updated Medicare billing information, and treatment for congestive heart failure." ECF No. 32. According to Defendant, Plaintiff has not produced these records or authorizations that would permit Defendant to obtain the records directly from the medical providers.

Plaintiff opposes Defendant's motion, which Plaintiff characterizes as a motion "to require Plaintiff's counsel to produce surgical photographs" taken by Dr. Kaufman. ECF No. 34. Plaintiff initially responded to Defendant's motion by stating that Plaintiff has requested pre-surgical photographs from Dr. Kaufman but had not yet received anything. *Id.* Thereafter,

7

Plaintiff advised that she had received photographs from Dr. Kaufman and produced them to Defendant. *See* May 25, 2017 Letter from Robert Gallop. As such, Plaintiff contends Defendant's motion is moot.

In reply, Defendant argues that its motion is not moot because the motion sought more than Dr. Kaufman's photographs. However, to the extent it does so, Defendant's motion fails. First, at the in-person conference on April 6, 2017, defense counsel asked for and was granted leave to file a motion to compel only Dr. Kaufman's photographs. None of the other issues raised in Defendant's motion were mentioned by Defendant to the Court at that conference. Second, while Defendant complains generally of various discovery deficiencies, Defendant does not detail any previous attempts to resolve those issues. In fact, there is no assertion that Defendant made a good faith attempt to resolve any dispute related to these other records before seeking the Court's intervention. *See* Fed. R. Civ. P. 37(a)(1) ("The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."). Third, according to Defendant, it realized there were alleged deficiencies in Plaintiff's discovery responses when it received Dr. Copit's records on March 8, 2017. ECF No. 32 (Attorney Certification) at ¶ 14. Yet it did not advise the Court of any dispute in that regard until this motion. *See* Order at ECF No. 29 ("Counsel must confer in a good faith attempt to resolve any discovery or case management disputes. Any unresolved disputes must be brought to the Court's attention **immediately** by letter to the undersigned.") (emphasis in original).

Having not complied with the applicable Federal Rules and the Scheduling Order, and having failed to show good cause for this failure to comply, that part of Defendant's motion seeking discovery other than Dr. Kaufman's photographs is without merit. As to that part of

8

Defendant's motion seeking production of Dr. Kaufman's photographs, that request is moot. To the extent that Defendant also seeks sanctions against Plaintiff, no grounds have been shown to support the imposition of sanctions. As such, Defendant's motion is denied in its entirety.

III. Application to Bar Expert Reports

On May 16, 2017, Defendant served the supplemental report of its expert Dr. Esformes, an orthopedic expert who opined regarding the condition of Plaintiff's left shoulder. Plaintiff objects to this supplemental report as (1) not being contemplated by the January 27, 2017 Scheduling Order, which Plaintiff contends permitted additional discovery only with respect to Plaintiff's 2016 breast surgery; and (2) being out of time. The deadline in the Scheduling Order for service of supplemental expert reports was April 17, 2017, but, according to Plaintiff, counsel had agreed between themselves to an extension to May 1, 2017. Further, Plaintiff argues that the supplemental report of Dr. Esformes, as well as a supplemental report by Dr. Singer, rely on a police report of an automobile accident in which Plaintiff was involved on September 7, 2012. Plaintiff states that Defendant never amended its discovery responses to disclose the existence of the police report, and objects to Defendant's alleged "litigation by ambush." ECF No. 38 at 2.

In response, Defendant contends the supplemental reports were necessary because Defendant only learned of Plaintiff's involvement in the September 2012 motor vehicle accident on April 17, 2017. Defendant argues that it could not have anticipated the need for the supplemental reports any earlier, particularly because Plaintiff expressly denied being involved in any motor vehicle accidents after June 22, 2012, the date of the incident at Walmart.[2] Further,

---

[2] In support of this assertion, Walmart quotes Plaintiff's 2015 deposition testimony and cites the transcript at Exhibit A of counsel's certification (See ECF No. 40). However, Exhibit A is Plaintiff's 2017 deposition transcript, not the 2015 transcript. The Court presumes, however, that if Defendant had misrepresented Plaintiff's deposition testimony that Plaintiff would have promptly advised the Court of the error.

Defendant argues that it produced to Plaintiff the documents from which it learned of Plaintiff's motor accident to Plaintiff on April 24, 2017.

The Court has considered the parties' submissions and will deny the application. Had the information about Plaintiff's automobile accident been provided to Defendant in 2015 when Plaintiff was questioned about it at her deposition, the supplemental reports would have been unnecessary. Given how late in the case Defendant learned of Plaintiff's motor vehicle accident, the Court excuses the untimely service of Dr. Esformes' report. Finally, to the extent that Plaintiff claims to have been ambushed by information that she herself knew and should have disclosed to Defendant much earlier in this litigation, her assertion is without merit. The Court, therefore, denies Plaintiff's application to strike the supplemental reports of Drs. Esformes and Singer.

IV. Application to Quash Subpoena

On or about June 22, 2017, Defendant provided notice to Plaintiff of its intent to subpoena Plaintiff's former employer, Atlantic City Boys & Girls Club ("ACB&GC"). Plaintiff objects to this discovery as outside the scope of the latest Scheduling Order and asks the Court to quash the subpoena. Defendant responds that the discovery sought is necessitated by Plaintiff's alleged failure to supplement certain discovery responses and is relevant to Plaintiff's lost wage claim.

The Court will grant Plaintiff's application. First, the Scheduling Order of January 27, 2017 reopened fact discovery only to the extent necessary to address issues regarding Plaintiff's 2016 surgeries. This discovery falls outside of that scope.

Second, the Court held a telephone conference on June 19, 2017, just three days before Defendant provided Plaintiff with notice of its intent to serve the subpoena. Defense counsel

gave no indication during the telephone conference it would be seeking the additional discovery, did not seek leave to serve discovery outside the scope of the Scheduling Order, and did not advise the Court of the potential discovery dispute. Given the ongoing discovery disputes that existed at the time of this call, it was clear that Plaintiff had taken the position in this case that the January 27th Scheduling Order did not contemplate any discovery beyond Plaintiff's 2016 surgeries. The information sought by the subpoena to ACB&GC clearly falls outside that scope. As such, defense counsel's assertion that it could not have known on June 19th that there would potentially be a discovery dispute on June 22nd strains credibility.

Finally, Defendant asserts that discovery from ACB&GC is necessary and relevant to Plaintiff's lost wage claim. However, Plaintiff states that she is not and never has asserted a lost wage claim in this case. Consequently, the discovery sought will not be permitted, and Plaintiff's application will be granted. *See* Fed. R. Civ. P. 26(b)(1) (scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense …").

V.  Conclusion and Order

The Court has carefully considered the materials submitted by the parties and decides this matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated above,

IT IS on this 8th day of August 2017,

ORDERED that Plaintiff's motion to disqualify [ECF No. 31] is GRANTED in part and DENIED in part; and it is

ORDERED that Defendant may not use as evidence or otherwise the testimony and documents obtained from Dr. Kaufman on March 28, 2017; and it is further

ORDERED that Defendant's motion to compel [ECF No. 32] is DENIED; and it is further

ORDERED that Plaintiff's letter application to bar two defense expert reports is DENIED; and it is further

ORDERED that Plaintiff's letter application to quash the subpoena to ACB&GC is GRANTED.

<u>*s/ Douglas E. Arpert*</u>
DOUGLAS E. ARPERT
United States Magistrate Judge